UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DAVID LAFLEUR )<br>)<br>Defendant. ) | CRIM. NO. 04-10152-JLT |

### GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT

Defendant has filed a motion to dismiss which is both legally deficient and factually incorrect. For the reasons set forth below, defendant's motion to dismiss the indictment should be denied without an evidentiary hearing.

I. BACKGROUND

On May 13, 2004, a federal grand jury returned a two count indictment alleging perjury and obstruction of justice based upon the defendant's false and misleading testimony before a **different** federal grand jury more than two years earlier on February 7, 2002.[1] The defendant, a fourteen year veteran of the Fall River Police Department who was represented by counsel and who was advised of his Fifth Amendment rights before the grand jury, now claims he was "tricked" [DOB 1] into lying under oath because he was not told that he was a target of the grand jury's

---

[1] In defendant's opening brief ("DOB"), he repeatedly and falsely claims he was indicted in 2004 by the **same** grand jury which heard his perjurious testimony in 2002 [DOB 1, 10, 12, 13].

investigation. The defendant, who was **not** a target when he testified, chose to lie when asked various questions in February of 2002 before a federal grand jury which was investigating a Southeastern, MA criminal organization headed by an individual named Timothy Mello. This investigation ultimately led to the return of a RICO (18 U.S.C. §1962) indictment in September 2002 against Timothy Mello and five criminal associates (including defendant LaFleur's cousin, Vincent Schieri).

In the fall of 2003, Timothy Mello pled guilty to a superseding information which included a RICO conspiracy charge and several other felony violations. As part of his plea agreement, Mello agreed to cooperate with the government and to be debriefed regarding his own criminal wrongdoing and various public corruption matters. Timothy Mello indicated that he had paid LaFleur between $10,000 and $15,000 for confidential law enforcement information and other favors. Additionally, the defendant's cousin, Vincent Schieri, pled guilty to a marijuana trafficking charge and also entered into a cooperation agreement with the government. Vincent Schieri indicated that his cousin, defendant Lafleur, had confided to Schieri that he, Lafleur, had received payment from Mello after Lafleur did "a big favor" for Mello in 1992 when Mello was not arrested although present with two others during a search of a Fall River apartment found to contain a small amount of narcotics. Moreover, Schieri further

admitted that he had arranged meetings between LaFleur and Mello wherein LaFleur provided sensitive law enforcement information to Mello and, on approximately three occasions, Schieri witnessed LaFleur receive cash payments directly from Mello. Schieri specifically recalled a payoff defendant LaFleur received from Mello after identifying a trap and trace device for Mello.

**After** both Timothy Mello and the defendant's cousin Vincent Schieri agreed to cooperate and indicated to investigators that Lafleur had testified falsely two years earlier when Lafleur claimed that he had never taken any money or done any favors for the Mello criminal organization, an investigation was begun which culminated in the May 2004 indictment of Lafleur by a **new** grand jury.

**II. ARGUMENT**

**A. The Defendant's Motion to Dismiss the Indictment Challenges the Sufficiency of the Government's Proof and cannot be Decided without a Trial of the General Issue**

Defendant's motion raises a hodgepodge of issues which collectively amount to a contention that he did not knowingly and intelligently testify falsely before the grand jury because of government wrongdoing. As such, defendant is challenging the sufficiency of the government's proof at trial.

With respect to the perjury charge in Count One of the indictment, Section 1623 of Title 18 of the United States Code

provides in relevant part:

> Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined ... or imprisoned ... or both.

In order to prove the perjury charge against defendant LaFleur, the government must establish beyond a reasonable doubt the following four elements: (i) that the charged statement was made while the defendant was under oath; (ii) that the statement was false as set forth in the indictment; (iii) that the false statement was willfully and knowingly made; and (iv) the defendant made the alleged false statement concerning a matter material to the grand jury investigation. United States v. Scivola, 766 F.2d 37, 44 (1st Cir. 1985).

Defendant Lafleur is essentially contending that the indictment should be dismissed because the government cannot prove elements (ii) and (iii) of the perjury charge - he's insisting that his testimony was **not** false and that his testimony was not willfully and knowingly given because he was misled about his alleged target status [DOB 16-20]. Likewise, defendant is arguing that he cannot be proven guilty of the obstruction of justice charge in Count Two because he did not knowingly mislead the grand jury - he was "tricked" [DOB 1] into testifying the way

4

he did.[2]

Such arguments, in addition to being meritless, amount to a prediction that the government will not be able to prove essential elements of the charges at trial. As such, the defendant has provided the Court with no grounds for dismissal of the Indictment. Under Fed.R.Crim.P. 12(b), "[a]ny defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion." Here, whether defendant Lafleur's testimony was false and whether it was willfully and knowingly given cannot be determined without a trial. Moreover, defendant's allegations that the government engaged in perjury entrapment [DOB 20-22] are clearly relevant only to an affirmative defense <u>at trial</u> (as even the defendant appears to concede at DOB 21, footnote 8) and are not a proper basis for a pretrial motion to dismiss.

The term "general issue" as used in Fed.R.Crim.P. 12(b) means evidence relevant to the question of guilt or innocence. <u>United States v. Barletta</u>, 644 F.2d 50, 58 (1st Cir. 1981). A defense is "'capable of determination' if the trial of facts surrounding the commission of the alleged offense would be of no

---

[2] Generally, in an obstruction of justice case, the government must show that the defendant knowingly and intentionally undertook an action from which an obstruction of justice was a reasonably foreseeable result. The endeavor need not be successful. <u>United States v. Cintolo</u>, 818 F.2d 980, 1005 (1st Cir.), <u>cert. denied</u>, 484 U.S. 913 (1987).

5

assistance in determining the validity of the defense." United States v. Covington, 395 U.S. 57, 60 (1969), quoted in United States v. Del Monte, 470 F.Supp. 248, 249 (D. Mass. 1979). "On a motion to dismiss, an [indictment] must be tested by its sufficiency to charge an offense." Del Monte, 470 F.Supp. at 249, citing United States v. Sampson, 372 U.S. 75, 76 (1962). "An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956); United States v. Valencia-Lucena, 925 F.2d 506, 511 (1st Cir. 1991).

The Eleventh Circuit has summarized the rule:

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.

United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992). See also United States v. Shortt Accountancy Corporation, 785 F.2d 1448, 1452 (9th Cir. 1986) ("the district court must decide the issue raised in a pretrial motion before trial if it is 'entirely segregable' from the evidence to be presented at trial."); United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir.) (1987) ("[A] pretrial motion to dismiss the

6

indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general issue."); United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) ("Under Fed.R.Crim.P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial."); United States v. King, 581 F.2d 800, 802 (10th Cir. 1978) (reversing the district court's decision to grant defendant's motion to dismiss an information: "The matter raised by appellees' motion was not 'capable of determination without the trial of the general issue.'  It was the general issue.").

The defendant has no basis for contending that the indictment at bar is invalid on its face, nor has he contended that it was returned by an improperly constituted grand jury. Rather, his motion is predicated on his belief that the government will not be able to prove necessary elements of the perjury and obstruction of justice charges.  Such claims provide no basis for the remedy of dismissal and, as noted earlier, to the extent the allegations suggest perjury entrapment by the government that is an affirmative defense for trial.

Despite this procedural bar to the remedy sought by the defendant, his arguments are nevertheless addressed on the merits

in the following sections.

**B. Defendant's Due Process Rights Were Not Violated**

The defendant complains repeatedly that he and his counsel were not told that he was a target of the grand jury's investigation. This is a frivolous complaint for two important reasons. First, defendant Lafleur was **not** a target of the grand jury's investigation. Second, the United States Supreme Court has clearly and unequivocally ruled that grand jury witnesses are not entitled to target warnings. <u>United States v. Washington</u>, 431 U.S. 181, 189 (1977)(noting also that "it is firmly settled that the prospect of being indicted does not entitle a witness to commit perjury").

In February of 2002, defendant Lafleur, a Fall River police officer, appeared before a grand jury (with counsel) which was investigating Timothy Mello's criminal enterprise in Southeastern, MA. This grand jury ultimately indicted Mello and his coconspirators (including the defendant's cousin, Vincent Schieri) in September of 2002. This grand jury (which Lafleur claims he was a target of) **never** indicted Lafleur for anything. It was not until after both Timothy Mello and Vincent Schieri were convicted and agreed to cooperate (thereby revealing Officer Lafleur's lies) that a new grand jury indicted the defendant in May of 2004 (for perjury and obstruction of justice - not for RICO and the other offenses targeted by the first grand jury).

8

This two year chronology, which the defendant ignores in his motion, surely demonstrates that defendant was neither a target of the first grand jury nor the victim of perjury entrapment.

In what can only be characterized as comparing apples to oranges, the defendant argues that Lafleur's target status was demonstrated by Officer Jack O'Neil's grand jury testimony in May of 2004 regarding the materiality of defendant's false testimony in February of 2002 [DOB 13-14, 18]. Of course, the materiality of defendant Lafleur's 2002 testimony has nothing to do with whether he was a target of the original grand jury. Just because witnesses have material testimony to offer does not make them targets of the grand jury's investigation. Indeed, dozens of witnesses who appeared before the grand jury had material testimony to offer against Mello and his criminal enterprise - that did not mean these witnesses were targets of the grand jury. A statement is material if it is capable of influencing the grand jury - the statement need not be material to any particular issue, but rather may be material to any proper matter of the grand jury's inquiry. Materiality only calls for the lie to be a potential impediment, not an actual impediment, of the grand jury's inquiry. Materiality is demonstrated if a truthful statement could potentially aid the grand jury's inquiry, or if a false statement could potentially hinder it. See, 2A Kevin F. O'Malley, et al., Federal Jury Practice and Instructions §§

50.07-50.08(5th ed. 2000); 2 Leonard B. Sand, et al., <u>Model Federal Jury Instructions</u>, No. 48-5 (2001); <u>United States v. Conley</u>, 186 F.3d 7, 19 (1st Cir. 1999); <u>United States v. Edgar</u>, 82 F.3d 499, 510 (1st Cir. 1996); <u>United States v. Waldemer</u>, 50 F.3d 1379, 1382 (7th Cir. 1995); <u>United States v. Scivola</u>, 766 F.2d 37, 44 (1st Cir. 1985). Simply put, materiality has nothing to do with a witness' target status.

More absurdly, the defendant contends that "the government had to have known two years prior to Mello's testimony what Mello would say about the defendant or they never would have asked the defendant such pointed questions during his Grand Jury appearance" [DOB 20]. Apparently, defense counsel thinks the government has a crystal ball and can know years in advance what potential RICO defendants like Timothy Mello will say after they are indicted and **if** they agree to cooperate. It simply does not make any sense to argue, as defendant does [DOB 20] that "[i]t is axiomatic that the government prosecutors would not have asked Mello the exact same questions they asked the defendant, and received from him supposedly incriminating answers, unless the defendant was a target in the prior proceeding." **Of course** the prosecutors are going to ask witnesses like Mello whether Lafleur's exact testimony (two years earlier) was false or there would be no way to obtain an indictment of Lafleur for perjury. Defendant apparently fails to grasp that perjury indictments

10

cannot be returned unless there are witnesses available who can testify to the falsity of the testimony in question.

Furthermore, defendant's due process claims are not supported by the two First Circuit cases cited in his brief: United States v. Pacheco-Ortiz, 889 F.2d 301 (1st Cir. 1989); United States v. Babb, 807 F.2d 272 (1st Cir. 1986). The defendant in Babb, who was clearly a "target" of a drug investigation, lied before a grand jury which then indicted him for perjury and drug trafficking less than three weeks after his appearance before it. 807 F.2d at 275-76. The defendant appeared without counsel and was misleadingly told that he was not a target of the grand jury's investigation. 807 F.2d at 275. Despite these facts, the First Circuit ruled that "fundamental fairness" did not require reversal of the conviction because "it defies logic to argue that assurances that might have lulled a witness into giving incriminating statements had the effect of inducing the witness to commit perjury." 807 F.2d at 277-78. Moreover, in rejecting the defendant's Fifth Amendment claims, the First Circuit in Babb held that "the privilege against self-incrimination bars compelled testimony as to past crimes; it does not shelter new perjury." 807 F.2d at 277, citing United States v. Chevoor, 526 F.2d 178, 181 (1st Cir. 1975), cert. denied, 425 U.S. 935 (1976). The Babb court also noted that "our legal system provides methods for challenging the Government's right to

11

ask questions - lying is not one of them." 807 F.2d at 277, citing United States v. Wong, 431 U.S. 174, 177-79 (1977) and Bryson v. United States, 396 U.S. 64, 72 (1969).

In Pacheco, the First Circuit recognized again (as it did in Babb) that the Supreme Court in Washington has already ruled that grand jury witnesses are not entitled to "target" warnings. 889 F.2d at 307. The defendant in Pacheco was called before the grand jury two days before he was indicted and he was clearly a target of the grand jury's investigation. 889 F.2d at 308, n.4. Despite the First Circuit's evident displeasure with the prosecutor's failure to warn the defendant of his target status or to warn the defendant of his privilege against self-incrimination, the court declined to reverse the conviction. Moreover, the First Circuit noted that "the Fifth Amendment privilege does not provide a shield against perjury." 889 F.2d at 309.

### C. There Was No Perjury Entrapment

In light of the fact that more than two years elapsed before defendant Lafleur was indicted by a **new** grand jury after two criminals (Mello and Schieri) were indicted, convicted and persuaded to cooperate (thereby providing evidence to indict Lafleur), the notion of "perjury entrapment" is ludicrous. Additionally, as noted above, even the defendant appears to concede at DOB 21, footnote 8, that the doctrine of "perjury

12

entrapment" is clearly relevant only to an affirmative defense <u>at trial</u> and is not a proper basis for a pretrial motion to dismiss.

The sole case cited by defendant in support of his "perjury entrapment" claim is <u>United States v. Sarihifard</u>, 155 F.3d 301 (4th Cir. 1988). In <u>Sarihifard</u>, the Fourth Circuit rejected a "perjury entrapment" claim by a defendant (convicted after trial) who was indicted for perjury by the **same** grand jury before whom he had testified approximately seven months earlier. 155 F.3d at 305, 308. Although the government suspected the defendant in <u>Sarihifard</u> had lied in an interview with government agents prior to appearing before the grand jury, "this does not mean that the government did not have a valid purpose in eliciting [the defendant's] testimony before the grand jury" nor does it "show that the government knew [the defendant] would testify falsely before the grand jury". 155 F.3d at 308. The Fourth Circuit noted: "Petitioner had no right to provide false testimony under oath. It is a stalwart principle of American jurisprudence that testifying witnesses have two permissible choices. They can provide truthful testimony or they can invoke the protections of the Fifth Amendment." <u>Sarihifard</u>, 155 F.3d at 308, citing <u>Bryson v. United States</u>, 396 U.S. 64 (1969).

**D. There Was No Fifth Amendment Violation**

Despite the fact that the defendant was explicitly advised of his Fifth Amendment rights before the grand jury, he now tries

13

to conjure up a Fifth Amendment violation by claiming "exculpatory evidence" was withheld from the grand jury [DOB 1-2, 22-27]. Amazingly, in what appears to be a violation of Rule 3.3(a)(3) of the Massachusetts Rules of Professional Conduct ("Candor Toward The Tribunal"), defense counsel **fails to cite** Supreme Court precedent which is directly on point: <u>United States v. Williams</u>, 504 U.S. 36, 51-55 (1992). In fact, defense counsel, who is so quick to allege prosecutorial misconduct, attempts to mislead this Court by urging it [DOB 22] to adopt the reasoning of a Tenth Circuit case (<u>United States v. Page</u>, 808 F.2d 723 (10th Cir. 1987) which the Supreme Court discussed and rejected in <u>Williams</u>. In short, the Supreme Court in <u>Williams</u> clearly denied the same Fifth Amendment argument which defendant Lafleur is now making. 504 U.S. at 39, 45, 51.

In addition to attempting to mislead this Court by ignoring Supreme Court precedent which is directly on point, defense counsel also distorts the facts in an effort to suggest that exculpatory evidence was withheld from the grand jury. Chronologically, defendant's argument makes no sense. Defendant repeatedly cites as "exculpatory" the statements of Fall River Police Officers Charles Freitas and Bruce McCabe [DOB 23-23-25] which were given in response to questioning during an Internal Affairs investigation conducted by the Fall River Police **after** Lafleur was indicted. Since the statements were given after the

14

indictment, it would obviously have been difficult to present such statements to the grand jury.[3] Moreover, the statements are not exculpatory of the perjury/obstruction of justice charges against defendant Lafleur but are simply blanket denials of any wrongdoing by themselves with Officer Lafleur. Since neither Officer Freitas nor Officer McCabe were ever present when defendant Lafleur accepted cash from, or gave sensitive information to, Timothy Mello, it is hardly surprising (much less exculpatory) that they know of no such incidents. Although the Fall River Internal Affairs investigator seemed to wrongly suggest otherwise[4] and thereby excited the passions of his interviewees, no one has ever accused Officers Freitas or McCabe of taking money from Timothy Mello or providing him with sensitive law enforcement information.

### E. There Was No Outrageous Governmental Misconduct

A defense of outrageous governmental misconduct may be available where the actions of the government are so extreme as to violate fundamental fairness and are shocking to the universal

---

[3] As evidenced by one of the attachments to defendant's own motion, it should be noted that Officer Charles Freitas **did** testify before the grand jury - approximately one month before defendant Lafleur testified.

[4] As evidenced by one of the attachments to defendant's own motion, the Internal Affairs officer falsely told Officer McCabe that the indictment of Lafleur alleges police officers (in addition to Lafleur and including McCabe) received money from Mello during a 1992 search warrant. The indictment alleges no such thing.

sense of justice. <u>United States v. Santana</u>, 6 F.3d 1, 4 (1st Cir. 1993). As the First Circuit has noted, "the doctrine is moribund; in practice, the courts have rejected its application of this doctrine with almost monotonous regularity." <u>Id</u>. It is a severe remedy "reserved for the most appalling and egregious situations." <u>United States v. Guzman</u>, 282 F.3d 56, 59 (1st Cir. 2002). <u>See</u> <u>United States v. Panitz</u>, 907 F.2d 1267, 1272-73 (1st Cir. 1990) (an unbroken string of First Circuit cases has repulsed attempts to win dismissal of criminal charges on the theory of outrageous government misconduct); <u>United States v. Bouchard</u>, 886 F.Supp. 111, 120 (D.Me. 1995) (defendant required to show that conduct on part of governmental agents was a substantial contributing factor to cause defendant's unlawful activity).

There is nothing about the instant case which even remotely rises to the level of outrageousness so as to violate due process. Nobody forced the defendant, a fourteen year veteran of the Fall River police department who was represented by counsel and who was advised of his Fifth Amendment privilege when he appeared before the grand jury, to testify falsely. Indeed, the only outrageous government misconduct in this case occurred when a Fall River Police Officer, David Lafleur, lied under oath before a federal grand jury which was investigating Timothy Mello's criminal enterprise in Southeastern Massachusetts.

16

**F. There Is No Need for An Evidentiary Hearing**

An evidentiary hearing is not required simply because a defendant, through counsel, baldly alleges violations of the Constitution. Rather, the need for an evidentiary hearing, which determination is entrusted to the discretion of the district court, must be based upon a prima facie showing of impropriety on the part of the government. Nardone v. United States, 308 U.S. 338, 342 (1939); United States v. Migely, 596 F.2d 511, 513 (1st Cir.), cert. denied, 442 U.S. 943 (1979); United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983); United States v. Losing, 539 F.2d 1174, 1178 (8th Cir), cert. denied, 434 U.S. 969 (1977); United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. LaRouche Campaign, 682 F.Supp. 610, 620 (D. Mass 1987). Since there has been no such showing in this case, the defendant's motion should be denied without an evidentiary hearing.

**III. CONCLUSION**

For the foregoing reasons, defendant Lafleur's motion to dismiss the indictment is legally meritless and should be denied

without an evidentiary hearing.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

Dated: October 26, 2004        By: _____
                                        Brian T. Kelly
                                        Assistant U.S. Attorney


                            <u>CERTIFICATE OF SERVICE</u>

Suffolk, ss.                                Boston, Massachusetts
                                          October 26, 2004

    I, Brian T. Kelly, Assistant U.S. Attorney, do hereby certify that I have this day caused a copy of the foregoing to be mailed to counsel for the defendant in this case (R. Bradford Bailey, Esq. and Jeffrey A. Denner, Esq.).

                                        _____
                                        BRIAN T. KELLY
                                        Assistant U.S. Attorney